IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT BRANDON LINDBURG,  )<br>  )<br>     Plaintiff,  )<br>  )<br>  v.  )<br>  )<br>WINCO FOODS, LLC, fka WINCO  )<br>HOLDINGS, INC., fka WINCO FOODS,  )<br>INC.,  )<br>  )<br>     Defendant.  )<br>_____)  | Case No. CV-04-637-E-BLW<br><br>**MEMORANDUM**<br>**DECISION AND ORDER** |

## INTRODUCTION

The Court has before it Defendant's motion to compel arbitration of Plaintiff's claim under the Americans with Disabilities Act (ADA). (Docket No. 15). Defendant has moved to stay this action, requesting resolution through arbitration pursuant to the Federal Arbitration Act (FAA). The Court finds that the Plaintiff is not required to submit his claim to arbitration and may continue to pursue it in this forum.

## FACTS AND PROCEDURAL HISTORY

Plaintiff Robert Lindburg has been employed at Winco Foods as a meat

Memorandum Decision and Order - Page 1

wrapper since July 15, 2002.  Mr. Lindburg suffers from a congenital heart defect known as patent foramen ovale, which is characterized by a failure of the left and right atria of the heart to close naturally at birth.  During the month of February, 2003, Mr. Lindburg requested a leave of absence from Winco in order to recover from an upcoming surgery related to this condition.  Mr. Lindburg's request was accompanied by information provided by his physician.  On February 26, 2003, Winco requested further medical information regarding Mr. Lindburg's condition and surgery, stipulating that if the information did not arrive by March 12, 2003 WinCo would consider Mr. Lindburg to have voluntarily quit by not returning to work.

On March 14, 2003 WinCo received a fax in response to its request for further information.  WinCo responded to this fax with a letter on March 26, 2003, informing Mr. Lindburg that because his faxed information had not arrived by March 12, 2003 he would not be considered disabled and would be terminated for failing to return to work.

Mr. Lindburg filed a charge of disability discrimination with the Idaho Human Rights Commission, which found probable cause of illegal discrimination.  The Commission provided Mr. Lindburg with a notice of right to sue on September 23, 2004.  On November 9, 2004, the Equal Employment Opportunity Commission

**Memorandum Decision and Order - Page 2**

adopted the findings of the Idaho Human Rights Commission, issuing Mr. Lindburg a notice of right to sue. On December 22, 2004, Mr. Lindburg filed his complaint in this action, alleging illegal discrimination in violation of the Americans with Disabilities Act of 1990 and the Civil Rights Act of 1991.

As an employee of WinCo Foods, Mr. Lindburg is covered by WinCo's Hourly Employee Working Conditions & Wages Agreement. This collective bargaining agreement was negotiated by a committee on behalf of all WinCo employees. It provides for mandatory arbitration as the sole recourse for grievances, controversies, and claims not resolved to the employee's satisfaction, specifically including claims brought under the Americans with Disabilities Act of 1990 and Civil Rights Acts of 1991. On February 9, 2005, Defendant WinCo moved to compel arbitration of this matter and to stay this litigation.

## ANALYSIS

WinCo seeks to compel arbitration of Mr. Lindburg's ADA claims pursuant to a collective bargaining agreement containing a clear and unmistakable waiver of specific statutory rights. The ability of WinCo to compel arbitration of such claims remains unclear following recent Supreme Court decisions. However, the guidance offered by a series of circuit court decisions, as well as considerations of public policy and basic fairness, strongly suggest that a prospective waiver of

**Memorandum Decision and Order - Page 3**

individual statutory rights found in a collective bargaining agreement should not be enforced.

In a series of cases now known as the Steelworkers Trilogy, the Supreme Court declared that public policy favors the resolution of labor disputes through arbitration. *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564 (1960); *United Steelworkers v. Warrior Gulf and Navigation Co.*, 363 U.S. 574 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960). Following the Steelworkers Trilogy, contractual labor disputes were generally viewed as being arbitrable.

Despite this presumption in favor of arbitration, the Supreme Court, in *Alexander v. Gardner-Denver,* 415 U.S. 36 (1974), concluded that an agreement to arbitrate could not prevent an individual from suing to enforce statutory rights guaranteed by Congress. In *Gardner-Denver,* the Court specifically held that an employee's Title VII statutory right to a trial de novo was not foreclosed by the prior submission of his grievance under a collective bargaining agreement. *Id.* The Court held that individual statutory rights are separate and distinct from the contractual rights secured through a collective bargaining agreement. *Id.* at 50. The Court further noted: "The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the

**Memorandum Decision and Order - Page 4**

same factual occurrence." *Id*.

In *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728 (1981)., the Supreme Court applied the same reasoning to the Fair Labor Standards Act, holding that an action by truck drivers seeking enforcement of minimum wage provisions of the FLSA was not barred by the drivers' prior arbitration agreement over wage claims.

Both *Gardner-Denver* and *Barrentine* identified two primary harms which may result from compelling arbitration to settle federal statutory claims. The first such harm is the conflict between individual and collective interests which arises if collective bargaining agreements preclude judicial enforcement of individual statutory rights. The Supreme Court noted that a union could, without breaching its duty of fair representation, decide not to vigorously pursue an arbitration claim on a member's behalf. *Id.* at 742. The union's objective, the Court emphasized, is to maximize overall compensation of all its members, rather than to ensure that each employee receives the greatest compensation available. *Id.* In that case, the collective interest of the union would be permitted to frustrate the important individual interests reflected in the statutorily-conferred right.

The second harm identified in the *Gardner-Denver/Barrentine* line of cases

**Memorandum Decision and Order - Page 5**

is that arbitration is a fundamentally inferior process for enforcing statutory rights.[1] In reaching this conclusion, the Court observed that arbitrators were not competent to address the nature of statutory rights Congress sought to guarantee through legislation such as Title VII. *See, e.g., Gardner-Denver*, 415 U.S. at 57. The Court also pointed out that not all arbitrators have legal training, and that procedural protections in arbitration differ from those guaranteed by a judicial forum. *Id.*

In *Gilmer v. Interstate/Johnson Lane Corporation,* 500 U.S. 20 (1991), the Supreme Court narrowed its holding in *Gardner-Denver/Barrentine* that individual statutory rights could not be foreclosed by a prior arbitration agreement. In *Gilmer*, the Supreme Court held that an arbitration agreement could prospectively waive an individual's ability to enforce statutory rights in a judicial forum under certain circumstances. *Gilmer*, 500 U.S. at 20. Holding that a stockbroker was required to arbitrate his age discrimination claim under Age Discrimination in Employment Act, *Gilmer* did not expressly overrule *Gardner-Denver*, but distinguished it in three specific ways. *Id.* at 35. First, the court noted that the *Gardner-Denver/Barrentine* line of cases did not involve an agreement to arbitrate

---

[1] This conclusion was later rejected by the Supreme Court in *Gilmer v. Interstate/Johnson Lane Corporation,* 500 U.S. 20, 34 n.5 (1991).

**Memorandum Decision and Order - Page 6**

later statutory claims, but involved the question of whether contract-based claims could preclude later statutory claims. *Id.* In contrast, *Gilmer* involved a prospective waiver of statutory claims. *Id.* Second, unlike *Gilmer*, *Gardner-Denver* and *Barrentine* were not decided under the FAA, which reflects a "liberal federal policy favoring arbitration agreements." *Id.* (quoting from *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985)). Finally, the Supreme Court noted that both *Gardner-Denver* and *Barrentine* involved collective bargaining agreements, whereas *Gilmer* involved an individually-agreed upon waiver of statutory rights. *Id.*

This last distinction is most significant. Although *Gilmer* expressly repudiated *Gardner-Denver*'s reasoning for rejecting arbitration generally, it reaffirmed the Court's long-standing concern that union representation in arbitration might not fully vindicate individual statutory rights. *Id.* at 30-35.

While the distinction between collective bargaining agreements and individual waivers of statutory rights is an important one, the Supreme Court has not yet explicitly determined whether it is dispositive. In *Wright v. Universal Maritime Corporation*, the Court held that a collective bargaining agreement which prospectively waives an individual's right to a judicial forum is not enforceable where there is no "clear and unmistakable waiver" of the individual's statutory

**Memorandum Decision and Order - Page 7**

rights. *Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 82 (1998). The Court, however, expressly declined to address the issue of whether such an agreement would be enforceable if it contained such a clear and unmistakable waiver. *Id.*

Thus, there is no clear guidance from the Supreme Court as to the enforceability of collective bargaining agreements which, like the one at issue here, clearly and unmistakably waive individual statutory rights. However, the Supreme Court's decisions suggest that the resolution of this issue will turn on how prospective waiver agreements are distinguished from one another. If the critical distinction is between individually-negotiated waivers and those created through collective bargaining, then no matter how specific the language is, such waivers are unenforceable when found in a collective bargaining agreement. If, however, it is the clarity with which an agreement includes statutory rights that is dispositive, explicit agreements may be enforced to foreclose an individual's right to sue, even if they are contained in a collective bargaining agreement..

Circuit courts of appeals have arrived at differing conclusions in addressing this issue. A minority have rejected *Gardner-Denver* in the wake of *Gilmer*. *See Austin v. Owens-Brockway Glass Container, Inc.*, 78 F.3d 875 (4th Cir. 1996). The majority, however, still follow *Gardner-Denver*. *See, e.g., Brisentine v. Stone*

**Memorandum Decision and Order - Page 8**

*& Webster Eng'g Corp.*, 117 F.3d 519, 526 (11th Cir. 1997); *Harrison v. Eddy Potash, Inc.*, 112 F.3d 1437, 1453 (10th Cir. 1997). Following the Supreme Court's decision in *Wright*, circuit courts remain split. *See eg.*, *Carson v. Giant Food, Inc.*, 175 F.3d 325, 331-32 (4th Cir. 1999); *ALPA v. Northwest Airlines*, 199 F.3d 477 (D.C. Cir. 1999).

Although the Ninth Circuit has not addressed a case involving a collective bargaining agreement which clearly and unmistakably waives individual statutory rights, it has offered some guidance by emphasizing the significance of the distinction between collective bargaining agreements and individual statutory waivers. In *Local 246 Util. Workers Un. v. Southern Cal. Edison*, 83 F.3d 292, 297 (9th Cir. 1996), the Ninth Circuit held that "minimum wage and overtime provisions of the [Fair Labor Standards] Act are guarantees to individual workers that may not be waived through collective bargaining." Shortly before the Supreme Court's decision in *Wright*, the Ninth Circuit reaffirmed this distinction between individual waivers and those arising from collective bargaining agreements, noting that Gilmer's holding that arbitration could be compelled "does not bear on the right of employees covered by a collective bargaining agreement." *Albertson's, Inc. v. United Food and Comm. Workers Un.*, 157 F.3d 758, 762 (9th Cir. 1998).

**Memorandum Decision and Order - Page 9**

These cases demonstrate that the controlling distinction for prospective waivers of individual statutory rights is whether those waivers are individually-negotiated or found in a collective bargaining agreement. Individual statutory rights cannot be prospectively waived by a collective bargaining agreement, even where the waiver is clear and unmistakable. The Supreme Court has long based this distinction on the inherent tension between union interests and individual rights. Past cases have held that harmony of interest between the union and the individual employee cannot always be presumed. *See eg.*, Gardner-Denver, 415 U.S. at 58. A union balancing individual and collective interests might validly permit some employee's statutorily granted benefits or rights to be sacrificed if an alternative expenditure of resources would result in increased benefits for workers in the bargaining unit as a whole. *Barrentine*, 450 U.S. at 742. That concern survives the holding in *Gilmer* and strongly supports the conclusion that a collective bargaining agreement cannot require arbitration of individual statutory rights.[2]

The general presumption favoring arbitrability of labor disputes does not

---

[2] This conclusion may also find support in the general principle of contract law that an individual not a party to a contract may not be bound by its terms. Although it is unquestioned that unions possess the authority to negotiate certain terms on behalf of their members, it is far less clear that the individual union members have delegated to the union the authority to waive the members' statutory rights. However, this may raise factual issues which the Court will not consider at this time.

**Memorandum Decision and Order - Page 10**

undermine this conclusion.  As the Supreme Court stressed in *Wright*, the presumption of arbitrability in labor disputes "does not extend beyond the reach of the principal rationale that justifies it, which is that arbitrators are in a better position than courts *to interpret the terms of the CBA*."  *Wright*, 525, U.S. 70 at 78.  Declining to require arbitration, the Court further noted, in language applicable here: "The dispute in the present case . . . ultimately concerns not the application or interpretation of any CBA, but the meaning of a federal statute."  *Id.*

Applying these principles to the present case, it is clear that the collective bargaining agreement at issue here contained a clear and unmistakable waiver of, among other things, Mr. Lindburg's statutory rights as provided by the Americans with Disabilities Act of 1990 and the Civil Rights Act of 1991.  The agreement provides, in relevant part, "Such grievances, controversies, claims, or disputes subject to mandatory arbitration include, but are not limited to, claims under Title VII of the 1964 Civil Rights Act, Age Discrimination in Employment Act, the Civil Rights Act of 1991, and the Americans with Disabilities Act under federal law, anti-discrimination statutes under the applicable state and local law where the employee is or was employed, and applicable common law."  However, because this language is contained in a collective bargaining agreement, not expressly agreed to by Mr. Lindburg, it does not foreclose judicial enforcement of his

**Memorandum Decision and Order - Page 11**

individual statutory rights under the ADA.  The controlling distinction for such prospective waivers is between individual and collective bargaining agreements, not the clarity with which the arbitration clause attempts to waive Mr. Lindburg's statutory rights.  Although the Supreme Court has stated that collective bargaining agreements without a clear and unmistakable waiver of statutory rights may not preclude judicial enforcement, it specifically avoided reaching the question of whether those agreements which contain an explicit waiver are enforceable so as to preclude resort to the legal system.  *Wright*, 525 U.S. at 82.  For this reason, *Gardner-Denver* remains good law, as does the distinction made in *Gilmer* between individual and collective waivers of statutory rights.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to compel arbitration (Docket No. 15) is DENIED.

DATED:  **June 23, 2005**

B. LYNN WINMILL
Chief Judge
United States District Court